When imposing a sentence, is a life term of supervisory release in a run-of-the-mill possession of child pornography case, is it substantively unreasonable? In other words, does it infringe on the defendant's liberty more than reasonably necessary to ensure the goals of supervision, to impose a condition prohibiting him from residing within 2,000 feet of certain locations frequented by minors, as opposed to prohibiting him from living within direct view of such locations? Well, let me ask you this. Is there anything in the record that indicates where in Los Angeles County, Mr. De Los Santos can reside in compliance with the 2,000 foot restriction? And if the answer is no, did Mr. De Los Santos make any effort to present such evidence to the district court? To answer your honor's second question, the answer is no. But this court in Collins recognized that there's almost no place within Los Angeles County, given its density, where somebody can live without living within 2,000 feet. I'll also point out that given the circumstances of this case, again, both the government and the defense stipulated to the within direct view condition. The district court indicated on the Friday before the Monday sentencing that it was thinking about imposing this 2,000 foot condition. Well, there is evidence in the record that your client has a very large collection, and the district court seems to be, and your client says that he's never actually touched a child. However, he does indicate that he has engaged in sexual gratification using his collection of pornography. And the district court is concerned that if he not just that he has direct view, that if a lot of kids are walking by, that this will be a trigger for him to. I mean, we only have his statement that he hasn't ever touched a child. And there is no evidence presented on the other side that he doesn't have prior conviction. So we have to take that as is. But the district court seems very concerned that if he gets to watch, if he sees a lot of children and walking home from school, not that that's going to be a trigger for something more dangerous to occur. So why isn't that reasonable? Well, I think that this court is recognized in Collins, which is outside of Apodaca, which has said that that's unreasonable, that there is no basis to believe that that possessors of child pornography make that critical jump to contact sex offenses. There's no there's no proof in the literature. There's no proof in the case law. That's just not a reasonable inference. And with regard to this, to narrow, what is it your position that a 2000 foot restriction is unconstitutional per se, or that the facts in this case do not support such a restriction? I would say that it's the facts of this case, because in every case, the requirements of 3583 D is for a particular defendant to balance the whatever interest might be served by the condition against the deprivation of liberty to that. I will say, however, as I point out in the briefs that under this court's decisions and Rudd in Collins and the California Supreme Court decision in Taylor, in the vast majority, probably almost all of possession of child pornography cases, it will be inappropriate to oppose this condition. And I think what's significant is if the court looks at the unanimous California Supreme Court decision in Taylor, that was an uncontroversial decision that there was no rational basis to apply this restriction across the board to all sex offenders. And both the California Supreme Court and this court in Rudd actually cited to a California Department of Corrections Task Force report that included law enforcement personnel and victims rights advocates who about four years after Jessica's law put this 2000 foot requirement in the state law, they looked at it and said, this has turned out to be a really bad idea. This is not only not serving the goals of supervision, it's frustrating the goals of supervision. So so I can I return back to what does it mean to be in direct view of one of these places? Does that mean I could be around the corner from a school as long as I can't see it from my front porch? I think that that would be the that would be the reasonable interpretation of a direct view condition. But I want to point out that that condition, the one that he agreed to also includes a provision that the probation officer has to approve any residence. So, for example, if there is a but why wouldn't how can the probation officer disapprove the residence if it's compliant with that condition? Well, it can't it can't disapprove of it for being out of compliance of that. But the probation officer can always say there's something about this location that I don't feel it's an appropriate residence that it can't be worked out between the defendant's lawyer. Go back to the district court and say, I know this isn't specifically prohibited, but there's something about this location that. So so I'm right, though, under the direct view condition, he could live within 100 feet of a school, correct? As long as you don't see it from the front front front door. Correct. Well, yeah, I mean, I wouldn't that be odd because there's another condition that says he can't loiter within 100 feet, but he so under under your view, he could live within 100 feet, but can't loiter within 100 feet of a school. Does that make sense? I'm having a hard time thinking of of a a a configuration of buildings where he's going to be living within 100 feet of a school. But but yes, technically that can happen. But again, the the the solution to that problem is not to impose this really severe two thousand foot limitation. Well, what if it's at a thousand feet? Does that weaken your argument? Well, I mean, I think that any reduction in the number of feet going to I think that in that case are probably like there have to be more of a hearing about what what that would exclude as far as housing goes. Keep in mind that you put anything on saying that two thousand feet, he can't there's still a place to live in L.A. Why don't you do that? Well, I think there's two reasons. First of all, the notice is given to us fairly late. And second, I don't think that's necessary because of the difference between legislative and adjudicative facts. Well, it doesn't matter if you impose something that says it's sort of like, you know, it's kind of like a get out of town by sundown, you know, or, you know, that, you know, we don't allow them to put conditions like that. And if they said, you know, you can't live within let's say you can't live within a mile of a school. I think that makes this easier than two thousand feet, you know, all of those things. So I don't know why. Well, your Honor, if I may answer, I don't I'm below by two minutes, but I want to answer your question. I think that once you have a series of cases, Rudd, Collins, Apodoc, I mean, Taylor, all of which say that that both within L.A. County and Taylor's about San Diego County, whenever you've been in California, dense counties, it eliminates all but the most remote locations. So there was an eight day evidentiary hearing in Taylor. We can't have that in every supervised release case. We've got to rely on the case law that's already recognized this key, undisputable what if OK, what if we sent it back and said, OK, we on this record, we can't say that. But we sent it back and it's open. And the prosecutors found an expert to testify to say clearly that there is a relationship between people that use that look have this kind of collection of pornography and that that offend that they not only use it for grooming children, but that they use it as, you know, and for him seeing too many children, if it's around the corner, like Judge Bumate said or something, it's just going to be a trigger for this guy. And it's only a matter of time. What if what if they put on an expert like that? Can the judge then do it? I can't imagine there being such an expert given the case law and literature I've read, but I mean, like I said, this in any given case, if there is evidence that any particular defendant needs a particular condition based on his specific facts, then that would be a legitimate basis to impose a condition. Mr. De Los Santos is not different from the average run of the mill. This is a mine run case, right? Yes, yes. Mine run case. Correct. If anything, he's one of the least culpable possessors, given his background and lack of criminal history. Can I ask, though, how is your client? I'm sorry. How old is your client? Remind me. How old now? Thirty three years old now. OK, could I ask one quick question? So in the district court, you just challenged the direct view versus 2000 feet, right? So that's all we're asked to adjudicate, whether or not direct view versus 2000 feet is reasonable. You didn't offer any alternatives in between. No, we stipulated to the direct view condition in the plea agreement and we are not we are not violating that agreement. We are not asking for anything less. But you're not asking for a thousand feet or 500 feet, you're just you're it's only direct view or nothing, essentially. Well, yes, I mean, I think that we think that direct view, I think it's questionable whether in the mine run possession case, even direct review is clearly is the question the court has to answer because we did stipulate to that with regard. So I think that that's the least restrictive thing the court should impose, whether or not there's some number of feet. I think that that would be something that would require further factual development to figure out exactly what parks and schools and stuff are covered by the condition and what's what are the spheres around those that would be prohibited areas. All right, if my colleagues have any additional questions. We took up all your time and more, but I'll give you two minutes for rebuttal. OK, thank you. All right. From the government, please. For the United States and county, and I think that you really hit on the core issue in this case, and that is that this court's review in determining whether the district court abused its discretion in selecting the defined boundary 2000 foot restriction over the direct view restriction was an abuse of discretion based on the totality circumstances. And it's not the totality of any circumstances to which Mr. De Los Santos can point at any point in time. He's litigating the case. Collins makes clear it's the totality of the circumstances that were presented to the district court. And unfortunately, Miss Reese, if I may interject, what is the is this the least restrictive alternative the judge could have chosen? Your Honor, I think that the question is, was it the district court's discretion to conclude that this wasn't and the district court did conclude that this was the least restrictive alternative that would have accounted for Mr. De Los Santos's personal circumstances. But if this is a mine run case, what's the plausible basis that there that the court is considering there? So the circumstances that were presented to the district court did evidence that Mr. De Los Santos had a clear and significant sexual interest in children. And the district court really thoroughly explained many of those circumstances. I want to point to four in particular that I think make Mr. De Los Santos quite difficult for him. One is that, as Judge Callahan pointed out, he did gratify himself sexually to the child a particular preference for a particular age group of children, young boys between the ages of 10 and 15 years old. And he admitted that he was attracted to the children that he saw in public places. And those three facts combined as well with the fact that the videos that are described in the pre-sentence report included children that were in Mr. De Los Santos's preferred age and gender engaged in sexual contact with adult men. Now, the combination of those factors, I think, justifies and supports the district court's conclusion or at least renders it not an abuse of discretion for the district court to conclude that Mr. De Los Santos might be triggered by the presence of children near his home. And counsel, isn't that is the trigger to sexually that he would that he would sexually assault other children or is it that he would view child pornography again? I think both of those are valid concerns. I think the district court was primarily concerned with the risk of contact offenses. But as this court has repeatedly recognized and as the district were recognized as well, viewing child pornography and distributing child pornography, those are not victimless crimes. Those are they present a significant issue for the children who are victimized. He's created a market for child pornography. And so the risk that Mr. De Los Santos will be tempted to return to viewing child pornography and particularly this year volume of child pornography that he possessed in this case, that is a valid concern that the district court can try to remedy by removing any source of temptation. But what if all right, let's assume the practical consequences of this were not brought to the district court's attention, correct? They were not. All right. So hypothetically, if the 2000 foot restriction prevented Mr. De Los Santos from residing in any urban part of Los Angeles County, would that be an appropriate restriction? I think it would I think it would be much more difficult to justify the district court. Again, I have to point to particular facts and circumstances that would justify treating Mr. De Los Santos in that way. Here, the district court did. And the question is just whether those circumstances, whether the district court used its discretion in being so focused on those particular circumstances. But I do think it is more difficult to justify if De Los Santos meets the record that he needs to make in order to demonstrate that the concerns that he's brought now to this court's attention are valid concerns in this particular case. And I think that Taylor, on which De Los Santos relies significantly, is really in the importance of record development. Now, in Taylor, if you look at the procedural history of that case, it actually a sister case had actually gone up to the Supreme Court first, the California Supreme Court first. And the California Supreme Court said, look, these issues are specific to the localities in which these parolees are living. And so we need record development on it. And it sent it back. It sent it back to the state trial courts to engage in that. And should he be OK, since I think that Mr. Laughlin made the point that I guess it was the Friday before that both parties got notice that the district court did not intend to limit itself to the stipulation of no direct view. I mean, obviously, going into this, that the government thought no direct view was good enough. All right. Are you what are you wouldn't have agreed to it? Right. So. Right. And I believe on remand, we would make that recommendation given that it's the stipulation of the agreement. So but if but if it was remanded and would for to find out if this limits him from living at places, if it turns out he can live a lot of places, then what's your view of that? I mean, should he be given an opportunity? He said he couldn't put anything on about how limited it was because he only found out Friday before the, you know, it wasn't enough time to do that. Well, I don't I do what I think this court clearly could remand for further factual development if the court is concerned about the condition on this record at the same time, though, I do want to push back a little bit on this notion that Mr. De Los Santos had no opportunity to endeavor to put information before the district court that would have would have brought these circumstances to bear. I mean, the cases on which Mr. De Los Santos has relied were published by the time that the district court issued its notice. And Mr. De Los Santos didn't ask for more time to develop a record. He basically just stated his perfunctory objection for the record and then asked the district court to go on and roll on with the rest of sentencing. If Mr. De Los Santos was as concerned about these issues as he is, he really should have at least asked for more time to bring those issues and bring those circumstances to the district court's attention so that the district court could, in the first instance, consider the circumstances that Mr. De Los Santos pointed to that raised concerns. We have a below guideline sentence in this case as well, correct? Yes, your honor. So hypothetically, and I'm only saying this hypothetically because we don't we don't conference on these cases till after we hear oral argument. So I'm not I'm not speaking, but let's just say hypothetically that the panel affirmed based on the arguments that you're making right now. Does Mr. De Los Santos, if as he's trying to find a place to live, does he have a mechanism that he could bring this before the court and say, I would like relief from this because I can't find any place to live? I think he could he could seek modification of the condition, either to specifically, I mean, one example that he's given is his family home, which he says we likely wouldn't be able to live there. Of course, there is a record development on that issue yet. But if, for example, Mr. De Los Santos would like to have his family home exempted from the condition, he can seek modification of it in the district court. And the district court did indicate its receptiveness to modifying the condition if Mr. De Los Santos brought to the district court's attention concerns that would make it unworkable and particularly if he brought to the district court's attention issues that would make that condition unworkable and combined with factors showing that he was proceeding well in the rehabilitative treatment that he's now receiving. And so I think he does have a mechanism for trying to reduce the burden of the condition if it turns out that the condition is so restrictive that Mr. De Los Santos cannot find housing as he's concerned about. All right, but he didn't ask for a continuance below. No, to present additional evidence to that fact. No, he did not ask for additional time. So if I were to understand your view, what you're saying is based on this record, the district court gave reasons and he didn't present anything that said that he can't practically find a place to live. He didn't ask for a continuance to have a hearing or he didn't ask for to have his family home exempted from that. And so you're saying we should affirm and any relief he wants to seek from that would be why by way of modification, if if those factors that were not developed before the district court can be shown, is that what you're saying? Yes, essentially that the only circumstances that were actually presented to the district court were generally they were circumstances that support the district court's conclusion that Mr. De Los Santos had a sexual interest in children and should be kept away from them. And the district court, again, noted its concerns about the gaps that Judge Fumate has recognized and the ambiguity in the direct view condition. Well, he did make those submissions of his attraction, but it's the let's be clear, though, the record he has no convictions and there was no suggestion in the record that he had, in fact, ever approached a child in an inappropriate matter. Correct. I mean, we have to accept that as part of the record, right, too. There is a record about suggesting that there is no nothing in the record that suggests he did actually have a history of making contact with children. But the district court's burden in fashioning supervised release conditions is to consider the facts and circumstances of the individual offender and look forward in time to future crimes that the offender might commit. And given Mr. De Los Santos's admission, the district court, I don't think, abused its discretion in concluding that there was some risk that Mr. De Los Santos would recidivate either by viewing child pornography again or by making contact with a child in his preferred age range. All right. Are there any additional questions by the panel? No, thank you. We've gone slightly over, but you've answered all of our questions. Two minutes for a rebuttal to Mr. Laughlin. Thank you, Your Honor. First, just quickly, I'd just like to point to footnote seven in Collins, which the court recognized already that there's only a few isolated areas remain in the greater Los Santos area where defendants can live in compliance with the 2,000 foot condition. Beyond that, the government complains about us not presenting evidence about this condition at the sentencing. Once the government, once the court said it was going to impose this condition, the It's not our obligation to say that the 2,000 foot condition was unreasonable. It was their obligation to show that it was. So perhaps it's getting to the point where the best avenue would be a remand for factual findings, because I don't think the court can say that the condition is reasonable for this defendant without effectively saying that it's reasonable for every possession of child pornography defendant, which would put the court in sharp contrast, not only with the California Supreme Court. Counsel, did you you didn't make a procedural error in claiming in your release to us, right? No, because I think that the question for substantive reasonableness is given the record, is there anything the court could have said that could justify this condition? And I think there is. And I think that we should win on that because the record does not allow this. It's as Judge Watson said, this is a run of the mill possession case. So and the court, the California Supreme Court has already held that it cannot even be held upheld on a rational basis for such defendants. This court has strongly suggested in Collins and Rudd. So I don't think that there is any reasonable basis to uphold the condition on the record there is now. But to the extent the court thinks there is factual developments, it's either that would certainly be preferable to affirming. And as Judge Callahan suggested, hope that the defendant can work it out later when he becomes homeless. All right, that concludes argument in this matter. Thank you, counsel, both for your helpful arguments. This matter will stand submitted. The court will now be in recess until tomorrow morning at nine o'clock. And if the if you just all I think our I.T. person will dismiss counsel and move the judges to the waiting room. So today and everyone else that appeared. Thank you. This court for this session stands adjourned.
judges: Callahan, Watson, Bumatay